UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLERK
DISTRICT & BANKRUPTCY
COURTS

2008 APR -4 PM 10: 08

RECEIVED

| | |
|---|---|
| REBECCA A. BRUNOTTE,<br>864 N. Kentucky St.<br>Arlington, VA 22205<br><br>**PLAINTIFF**<br><br>v.<br><br>LURITA ALEXIS DOAN,<br>Administrator<br>General Services Administration,<br>1800 F St., N.W.<br>Washington, DC 20407<br><br>**DEFENDANT** | Case No. _____ |

## COMPLAINT

### (Violation of Privacy Act)

1)      Plaintiff Rebecca A. Brunotte brings this action against Defendant Lurita Alexis Doan, Administrator of the General Services Administration, to recover, actual damages not less than $1,000, injunctive relief, and reasonable attorney's fees and costs for violations of the Privacy Act, 5 U.S.C. §552a, et seq.

### PARTIES, JURISDICTION, AND VENUE

2)      Plaintiff Rebecca A. Brunotte is a resident of 864 N. Kentucky St., Arlington, Virginia 22205.

3)      Defendant Lurita Alexis Doan is the Administrator of the United States General Services Administration (GSA), an agency of the U.S. Government.

4)      GSA employed Ms. Brunotte at its Headquarters, located at 1800 F St., N.W., Washington, D.C. 20405, from January 27, 2003, to November 26, 2006.

5)     The Privacy Act, 5 U.S.C. §552a(g)(1), provides this Court with personal jurisdiction over GSA because the acts Ms. Brunotte alleges as violations of the Act occurred at GSA's Washington, D.C. Headquarters.

6)     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

7)     Venue is proper in this Court pursuant to 5 U.S.C. §1391.

## STATEMENT OF FACTS

8)     In January 2003, GSA hired Ms. Brunotte as the Director of Information Technology (IT) Operations, GS-15 step 9, in the Federal Technology Service (FTS).

9)     In January 2004, Ms. Brunotte received a Quality Step Increase to step 10 for exemplary service, performance, and accomplishments.

10)    Beginning September 19, 2005, Ms. Brunotte worked on a 90-day detail project relating to IT consolidation at the GSA Headquarters at 1800 F St., in Washington, DC.

11)    On November 3, 2005, Ms. Brunotte contacted the GSA Equal Employment Opportunity (EEO) Office to initiate counseling for a complaint of discrimination based on gender (female) and reprisal for prior EEO activity. Ms. Brunotte's EEO complaint was initiated under 29 C.F.R. §1614.105.

12)    Ms. Brunotte's November 3, 2005, EEO complaint alleged discrimination when Ms. Brunotte received a Level 2 (Partially meets expectations) overall appraisal on her annual performance appraisal that she received on November 2, 2005.

13)    Ms. Brunotte's November 3, 2005, EEO complaint also alleged discrimination because GSA was initiating a criminal investigation into Ms. Brunotte's requests for reimbursement of travel expenses and compensatory time.

14)    On January 4, 2006, the GSA EEO Office issued the EEO Counselor's Report for Ms. Brunotte's EEO complaint.

15)    Ms. Brunotte's EEO Counselor's Report contains a summary of Ms. Brunotte's allegations of discrimination, a summary of the Counselor's interview with Ms. Brunotte, a copy of Ms. Brunotte's mid-year and annual performance appraisals for October 1, 2004, through September 30, 2005, Ms. Brunotte's self-evaluation form for her performance appraisals for October 1, 2004, through September 30, 2005, Ms. Brunotte's travel expense reimbursement forms, and information regarding the criminal investigation surrounding the travel expense reimbursement.

16)    Ms. Brunotte's EEO Counselor's Report contains a provision that states, "Any information obtained during this inquiry is protected by the Privacy Act of 1974. (P.L. 93-579)."

17)    On January 25, 2006, Ms. Brunotte filed a formal EEO complaint of discrimination against GSA, based on the allegations raised in the counseling stage on November 3, 2005. This formal complaint was filed pursuant to 29 C.F.R. §1614.106.

18)    On February 2, 2006, the Agency accepted Ms. Brunotte's formal complaint for investigation.

19)    In March 2006, Ms. Brunotte became aware that on or about December 13, 2005, Casey Coleman, her supervisor, disclosed the contents of Ms. Brunotte's EEO counseling report to GSA employees, Gary Drugley and John Geist, a contractor, Cecelia Brown, and to Ms. Coleman's husband, Steve Bolster.

20)    Gary Drugley had no business reason to know the contents of Ms. Brunotte's EEO counseling report.

3

21)    John Geist had no business reason to know the contents of Ms. Brunotte's EEO counseling report.

22)    Cecelia Brown had no business reason to know the contents of Ms. Brunotte's EEO counseling report.

23)    Steve Bolster had no business reason to know the contents of Ms. Brunotte's EEO counseling report.

24)    Casey Coleman had no business reason to know the contents of Ms. Brunotte's EEO counseling report.

25)    On June 20, 2006, Ms. Brunotte submitted applications for employment to the Government Printing Office (GPO) for vacancy announcement 06-436, IT Specialist (Customer Support/Policy and Planning) grade 15, occupational series 2210.

26)    Ms. Brunotte interviewed for the position of IT Specialist, grade 15, occupational series 2210, vacancy announcement 06-436, at the GPO Headquarters, in Washington, D.C., on September 18, 2006, and September 26, 2006.

27)    On October 5, 2006, Ms. Brunotte received a tentative offer for employment at GPO via email from Fran Cowles, GPO HR specialist. The tentative offer for employment at the GPO was subject to Ms. Brunotte's successful completion of a Questionnaire for Non-Sensitive Positions (Form SF-85) and a Declaration of Federal Employment (Form OF-306).

28)    On October 11, 2006, Ms. Brunotte sent her completed Questionnaire for Non-Sensitive Positions (SF-85) and her Declaration of Federal Employment (OF-306) to the GPO via facsimile.

29)    Question 9 of Ms. Brunotte's Declaration of Federal Employment (OF-306) asked, "During the last 10 years, have you been convicted, been imprisoned, been on probation, or been on parole?"

30)    Ms. Brunotte truthfully answered "No" to Question 9 on the Declaration of Federal Employment (OF-306).

31)    Question 12 of Ms. Brunotte's Declaration of Federal Employment (OF-306) asked, "During the last 5 years, have you been fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management or any other Federal Agency?"

32)    Ms. Brunotte truthfully answered "No" to Question 12 on the Declaration of Federal Employment (OF-306).

33)    On October 12, 2006, Ms. Brunotte received a Notice of Proposed Removal from Casey Coleman, her first-line supervisor at GSA based on allegations raised in the GSA's criminal investigation regarding travel expense reimbursement.

34)    On October 16, 2006, Ms. Brunotte received an email from GPO asking for the remaining completed pre-employment forms. Ms. Brunotte contacted Sylvia Benagh, GPO HR specialist, and scheduled a meeting to allow her to bring the completed forms to GPO and complete the mandatory drug test.

35)    On October 25, 2006, Ms. Brunotte met with Ms. Benagh, to review all of her employment forms and to complete a drug test.

36)    On October 25, 2006, Ms. Brunotte met with Richard Leeds, Director, Business Systems Support, her would be future supervisor at GPO. Mr. Leeds informed Ms. Brunotte that her first day of employment at GPO would be November 26, 2006.

37)    At that time, Ms. Brunotte asked Mr. Leeds to be off on leave on November 26 and 27, and to report to work on November 28. Mr. Leeds approved the requested leave.

38)    On November 1, 2006, Ms. Brunotte received the Report of Investigation for her EEO case at GSA, Agency Case No. 06-COFTSRB-1.

39)    On November 2, 2006, Ms. Brunotte received an email from Ms. Cowles at GPO titled "Final Appointment Letter" congratulating Ms. Brunotte on her selection. The letter stated the position title, type of appointment, grade/rate of pay, hours of duty and organizational assignment. This letter also set the effective date for the commencement of Ms. Brunotte's employment at GPO for November 26, 2006.

40)    From November 1, 2006, through November 15, 2006, Ms. Brunotte engaged in settlement discussions with GSA regarding her EEO case.

41)    Pursuant to the settlement terms being negotiated with GSA in her EEO case, on November 14, 2006, Ms. Brunotte emailed Ms. Cowles, Ms. Benagh, and Ms. Trina Harvell-Trusty, Human Capital Assistants at GPO, that their point of contact at GSA for personnel issues regarding Ms. Brunotte's employment at GSA was Sherrie Sesker, Employee Relations Specialist.

42)    On November 15, 2006, Ms. Brunotte signed a settlement agreement in her EEO case against GSA.

43)    Ms. Brunotte's EEO settlement with GSA included the following provisions:

¶1    The Agency (GSA) agrees to rescind Complainant's proposed removal action dated October 12, 2006, and that *Complainant had a clean record while employed at GSA.*

¶2    The Agency (GSA) agrees to *raise Complainant's Associate Performance Plan and Appraisal System ("APPAS") performance appraisal for the performance period ending September 30, 2005, from a level 2 to a level 3, with no comments by November 25, 2006.*

\* \* \*

¶5    GSA agrees to designate Sherrie L. Sesker, Employee Relations Specialist, Employee Relations Branch, 1800 F Street, NW, Room 1118, Washington, DC 20405-0001, (202) 501-0610, as the person prospective employers of Complainant may call for a reference. If she ceases employment with GSA or otherwise ceases to be able to perform the function of providing the neutral reference, the Agency will designate another person in the Employee Relations Branch. The Agency will notify Complainant of the name, address, and telephone number of the person so designated. *Ms. Sesker shall provide only a neutral reference, and shall only state Complainant's dates of employment with GSA, her job title at the time of her resignation, that she resigned her employment or transferred to another Federal Agency, information about her salary, and her last performance rating.* It will be Complainant's responsibility to provide prospective employers with Ms. Sesker's name.

\* \* \*

¶7    Complainant agrees to resign her position of Supervisory Program Manager effective November 25, 2006. She will use a combination of coming into work and using her remaining annual leave or leave without pay prior to her resignation. At the time Complainant signs this agreement she will provide to GSA a signed statement reflecting that she is voluntarily resigning her position effective November 25, 2006. *If Complainant finds employment with another Federal agency prior to the effective date of her resignation she will transfer to that agency effective November 26, 2006.*

(Emphasis added.)

7

44)    Ms. Brunotte used scheduled leave at GSA from November 20, 2006, through November 24, 2006.

45)    On November 20, 2006, Mr. Kerry Mannion, from GSA Office of Inspector General (OIG), placed a telephone call to Nathan Brown, a Special Agent for the GPO OIG, to communicate his belief that Ms. Brunotte was on probation resulting from the GSA criminal investigation regarding travel expense reimbursement.

46)    The information that Mr. Mannion told Mr. Brown, regarding Ms. Brunotte being on criminal probation, was false.

47)    On November 21, 2006, Mr. Mannion, from GSA, sent Mr. Brown, at GPO, a letter via facsimile that contained the OIG investigative report in Ms. Brunotte's criminal case regarding the travel expense reimbursement.  The document sent by Mr. Mannion explicitly stated, "You are advised that this report is from a system of records known as "GSA/ADM 24, Investigation Case Files," which is subject to the provisions of the Privacy Act of 1974.  Consequently, this report may be disclosed to appropriate GSA officials pursuant to a routine use."  In addition, each page of the report sent to Mr. Brown, at GPO, is marked, "FOR OFFICIAL USE ONLY."

48)    Mr. Brown informed his supervisor Ronald Koch, Assistant Inspector General for Investigations GPO OIG, of the contents of the letter from Mr. Mannion.

49)    Ms. Brunotte did not authorize the disclosure of the GSA OIG investigative report to GPO OIG.

50)    The documents that Mr. Mannion from GSA OIG sent to Mr. Brown at GPO OIG did not contain information that showed that the court dismissed Ms. Brunotte's criminal charges.

51)    On November 24, 2006, Ms. Brunotte left her employment at GSA per the settlement agreement, paragraph 7, to accept employment at GPO.

8

52)    On November 27, 2006, Sallie E. Lucas and Lori James, HR specialists at GSA, issued a Request for Personnel Action, Form SF-52, stating that Ms. Brunotte resigned from GSA for personal reasons.

53)    Ms. Brunotte's first official day on GPO rolls was November 27, 2006. Ms. Brunotte used pre-approved leave for November 27, 2006.

54)    On November 28, 2006, Ms. Brunotte reported for her first day of work at GPO.

55)    On November 28, 2006, Vickie Barber, GPO Director of Human Capital Operations, refused to allow Ms. Brunotte to begin working at GPO and advised her to return to GSA.

56)    Ms. Barber had been advised by her senior management at GPO that there may have been a problem with Ms. Brunotte's selection for the position.

57)    On November 29, 2006, Ms. Barber met with Mr. Leeds, the recommending official in Ms. Brunotte's selection, and with Dr. William T. Harris, Ph.D., Ms. Barber's senior manager. In the meeting, Mr. Leeds and Dr. Harris stated that they would not appoint Ms. Brunotte without further investigation.

58)    On November 30, 2006, Ms. Barber advised Ms. Harvell-Trusty to request a Form SF-75, "Request for Preliminary Employment Data," to determine what issues remained before appointing Ms. Brunotte to the position of IT Specialist.

59)    On or about November 30, 2006, upon receipt of the Request for Preliminary Employment Data, Form SF-75, from GSA, Ms. Barber noticed that Ms. Brunotte's rating of record was a Level 2, not a Level 3.

60)    On or about November 30, 2006, upon receipt of the Request for Preliminary Employment Data, Form SF-75, from GSA, Ms. Barber noticed that Section I – Unfavorable Data, Question 55, which asks, "Is There Unfavorable Information, in Other Files, e.g., Letters of

Warning, Admonishment, Reprimand, Suitability or Letter of Decision on an Adverse Action?" was marked "Don't Know."

61)    On November 30, 2006, Ms. Barber contacted Ms. Sesker, and Ms. Sesker sent Ms. Brunotte's most current performance evaluation rating of "Satisfactory" via facsimile.

62)    On December 13, 2006, Ms. Brunotte received a Withdrawal of Job Offer notice from GPO, dated December 7, 2006 signed by Sheila Clark, Human Capital Manager for GPO.

63)    On December 27, 2006, one month after the implementation deadline for the Settlement Agreement, Ms. Brunotte received a copy of her Official Personnel Folder (OPF) from GSA's Office of Human Resources.

64)    On December 28, 2006, Ms. Brunotte reviewed her OPF and discovered that GSA had failed to purge references to the proposed removal and other negative references as required by paragraph 1 of the Settlement Agreement in her EEO case which was in effect or enforceable on November 22, 2006:

> ¶1  The Agency agrees to rescind Complainant's proposed removal action dated October 12, 2006, and that Complainant had a clean record while employed at GSA.

65)    Included in Ms. Brunotte's OPF was a Request for Preliminary Employment Data, Form SF-75. On Ms. Brunotte's SF-75, GSA failed to provide a response to Box 54 in Section I titled "Unfavorable Data," which asks, "Does OPF/MRPF Contain Removal, Suspension, Discharge or change to Lower Grade Actions?"

66)    In Ms. Brunotte's SF-75, GSA answered "Don't Know" to Box 55 in Section I "Unfavorable Data," which asked, "Is There Unfavorable Information, in Other Files, e.g., Letters of Warning, Admonishment, Reprimand, Suitability or Letter of Decision on an Adverse Action?"

67)    On Ms. Brunotte's SF-75, Question 59-A in Section K – Security Data asked, "If investigation is Pending, Show type, Date Initiated and Agency Conducting it" to which GSA answered "30." GSA never indicated what the response "30" meant.

68)    Pursuant to Ms. Brunotte's settlement agreement in her EEO case, all negative references should have been expunged from her record.

69)    On December 28, 2006, Ms. Brunotte reviewed her OPF and discovered that GSA had failed to raise her performance appraisal from a level 2 to a level 3 with no comments as required by paragraph 2 of the Settlement Agreement in her EEO case which was in effect or enforceable on November 25, 2006:

> ¶2  The Agency agrees to raise Complainant's Associate
> Performance Plan and Appraisal System ("APPAS")
> performance appraisal for the performance period ending
> September 30, 2005, from a level 2 to a level 3, with no
> comments by November 25, 2006.

70)    Upon reviewing her OPF, Ms. Brunotte discerned that Section 5 of the Request for Preliminary Employment Data, Form SF-75, Performance Data, Ratings of Record, Box 44, GSA indicated that she received a "Level 2" rating for the period from September 30, 2004, to October 1, 2005.

71)    Pursuant to paragraph 2 of the settlement agreement in Ms. Brunotte's EEO case, the Request for Preliminary Employment Data, Form SF-75, should have indicated that Ms. Brunotte's rating of record for the period ending on October 1, 2005, was a "Level 3."

## FIRST CAUSE OF ACTION
### (Unauthorized Disclosure of Private Documents)

72)    Ms. Brunotte adopts and incorporates by reference paragraphs 1 through 71 above.

73)    On or about December 13, 2005, Ms. Coleman emailed Mr. Geist, Mr. Drugley, Ms. Brown, and Mr. Bolster, copies of Ms. Brunotte's EEO Counselor's Report, which contained a summary of Ms. Brunotte's allegations of discrimination, a summary of the Counselor's interview with Ms. Brunotte, a copy of Ms. Brunotte's mid-year and annual performance appraisals for October 1, 2004, through September 30, 2005, her self-evaluation form for her performance appraisals for October 1, 2004, through September 30, 2005, Ms. Brunotte's travel expense reimbursement forms, and information regarding the criminal investigation surrounding the travel expense reimbursement.

74)    Ms. Brunotte did not consent to GSA releasing her EEO counseling report to Ms. Coleman.

75)    Ms. Coleman did not request or obtain Ms. Brunotte's consent to disclose Ms. Brunotte's EEO counseling report to Mr. John Geist, Mr. Gary Drugley, Ms. Cecilia Brown, or Mr.Steve Bolster.

76)    Ms. Brunotte did not consent to Ms. Coleman's disclosure of Ms. Brunotte's EEO counseling report.

77)    The Privacy Act, 5 U.S.C. §552a(b), prohibits agency disclosure "of any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains…"

78)    GSA's disclosure of Ms. Brunotte's EEO Counseling Report to Ms. Casey Coleman was not made pursuant to an exception to 5 U.S.C. §552a(b), listed at 5 U.S.C. §552a(b)(1) – (12).

79)    Ms. Coleman's disclosure of Ms. Brunotte's EEO Counseling Report to Mr. John Geist was not made pursuant to an exception to 5 U.S.C. §552a(b), listed at 5 U.S.C. §552a(b)(1) – (12).

80)    Ms. Coleman's disclosure of Ms. Brunotte's EEO Counseling Report to Mr. Gary Drugley was not made pursuant to an exception to 5 U.S.C. §552a(b), listed at 5 U.S.C. §552a(b)(1) – (12).

81)    Ms. Coleman's disclosure of Ms. Brunotte's EEO Counseling Report to Ms. Cecilia Brown was not made pursuant to an exception to 5 U.S.C. §552a(b), listed at 5 U.S.C. §552a(b)(1) – (12).

82)    Ms. Coleman's disclosure of Ms. Brunotte's EEO Counseling Report to Mr. Steve Bolster was not made pursuant to an exception to 5 U.S.C. §552a(b), listed at 5 U.S.C. §552a(b)(1) – (12).

83)    The disclosures of Ms. Brunotte's EEO Counseling Report to Ms. Coleman, Mr. Geist, Mr. Drugley, Ms. Brown, and/or Mr. Bolster violated 5 U.S.C. §552a(b), resulting in humiliation, insult, and loss of reputation for Ms. Brunotte.


### SECOND CAUSE OF ACTION
### (Unauthorized Disclosure of Private Documents)

84)    Ms. Brunotte adopts and incorporates by reference paragraphs 1 through 83 above.

85)    Ms. Brunotte's EEO settlement agreement bound the agency to provide a neutral reference and to expunge certain documents, such as the notice of proposed removal and disciplinary records, from its files on Ms. Brunotte, as if those events never occurred.

86)    GSA did not provide a neutral employment reference for Ms. Brunotte as was required by Ms. Brunotte's November 15, 2006, EEO settlement agreement, thereby disclosing private and inaccurate information about Ms. Brunotte to Ms. Barber, Mr. Leeds, and Dr. Harris at GPO.

87)    Pursuant to Ms. Brunotte's settlement agreement, the answer to Question 59-A in Section K – Security Data on Form SF-75, which asked, "If investigation is Pending, Show type, Date Initiated and Agency Conducting it" should have been blank rather than having "30" written as the answer.

88)    GSA answered "Don't Know" to Question 55 in Section I – Unfavorable Data on Form SF-75.  GSA's answer should have been "No."  GSA's answer of "Don't Know" was an improper disclosure to GPO because GSA's answer brought into question whether unfavorable information existed in Ms. Brunotte's files.

89)    GSA failed to answer Question 54 in Section I – Unfavorable Data on Form SF-75. GSA's failure to answer was an improper disclosure to GPO because GSA's failure to answer forced GPO to question whether Ms. Brunotte was removed, suspended, discharged, or changed to a lower grade.

90)    GSA OIG sent GPO OIG documents contained within GSA OIG's system of records maintained solely for the use of GSA officials.

91)    The Privacy Act, 5 U.S.C. §552a(b), prohibits agency disclosure "of any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains..."

14

92)    GSA sent Ms. Brunotte's OPF to Ms. Barber, Mr. Leeds, and Dr. Harris at GPO. The OPF contained information which was inaccurate and/or which should have been expunged and to which GPO officials therefore had no need to know.

93)    Ms. Brunotte did not consent to GSA sending GPO the SF-75 Form with erroneous information.

94)    Ms. Brunotte did not consent to GSA OIG's disclosure of her investigative file to GPO OIG.

95)    GPO rescinded its employment offer to Ms. Brunotte due to the inaccurate SF-75 Form sent by GSA to GPO as well as the documents sent by Mr. Mannion at GSA OIG to Mr. Brown at GPO OIG.

96)    GSA violated 5 U.S.C. §552a(b) by intentionally disclosing the inaccurate SF-75 Form to GPO.

97)    GSA violated 5 U.S.C. §552a(b) by intentionally disclosing Ms. Brunotte's GSA OIG investigative report

98)    As a result of GSA sending the SF-75 Form, the OIG investigation report, and/or by intentionally disclosing information that held Ms. Brunotte in a negative light in derogation of her EEO settlement agreement, GPO rescinded its offer of employment to Ms. Brunotte.

99)    GSA's disclosures violated 5 U.S.C. §552a(b), resulting in humiliation, insult, loss of reputation, and loss of employment for Ms. Brunotte.


## THIRD CAUSE OF ACTION
### (Failure to Maintain Accurate Records)


100)    Ms. Brunotte adopts and incorporates by reference paragraphs 1 through 99 above.

101) Ms. Brunotte's EEO settlement agreement bound GSA to rescind her proposed removal and ensure that Ms. Brunotte had a clean record while at GSA.

102) Ms. Brunotte's EEO settlement agreement bound GSA to expunge "Unfavorable Data" as referenced in Section I – Unfavorable Data on the Request for Preliminary Employment Data, Form SF-75.

103) Ms. Brunotte's EEO settlement agreement bound GSA to expunge references to any investigation.

104) Pursuant to Ms. Brunotte's settlement agreement, the answer to Question 59-A in Section K – Security Data on Form SF-75, which asked, "If investigation is Pending, Show type, Date Initiated and Agency Conducting it" should have been blank rather than having "30" written as the answer to comply with the terms of the settlement agreement.

105) Pursuant to Ms. Brunotte's settlement agreement, the answer to Question 55 in Section I – Unfavorable Data on Form SF-75, should have read, "No."

106) Pursuant to Ms. Brunotte's settlement agreement, the answer to Question 54 in Section I – Unfavorable Data on Form SF-75, should have read, "No."

107) GSA OIG's disclosure of Ms. Brunotte's investigative file to GPO OIG did not include the fact that the court dismissed Ms. Brunotte's criminal charges regarding travel expense reimbursement.

108) GSA did not change Ms. Brunotte's OPF on or before November 25, 2006, as required by Ms. Brunotte's November 15, 2006, EEO settlement agreement.

109) GPO rescinded its employment offer to Ms. Brunotte due to the level 2 performance rating and GSA's answer of "Don't Know" to Section I – Unfavorable Data, Question 55,

reflected in the "Request for Preliminary Employment Data," Form SF-75, sent by GSA to Ms. Barber at GPO.

110)    GPO rescinded its employment offer to Ms. Brunotte due to the incomplete description of Ms. Brunotte's criminal case from Mr. Mannion at GSA OIG to Mr. Brown at GPO OIG.

111)    The Privacy Act, 5 U.S.C. §552a(e)(5), requires that GSA to maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

112)    GSA violated 5 U.S.C. §552a(e)(5) because it intentionally and/or wrongfully failed to timely change Ms. Brunotte's OPF in accordance with her November 15, 2006, EEO settlement agreement.

113)    GSA violated 5 U.S.C. §552a(e)(5) because it intentionally and/or wrongfully failed to maintain a complete and accurate description of Ms. Brunotte's criminal investigative file before transmitting it to Mr. Brown at GPO OIG.

114)    GSA's violations of 5 U.S.C. §552a(e)(5) caused GPO to rescind its offer of employment to Ms. Brunotte.

115)    GSA's violations 5 U.S.C. §552a(e)(5), resulted in humiliation, insult, loss of reputation, and loss of employment for Ms. Brunotte.


**RELIEF REQUESTED**

WHEREFORE, Plaintiff Rebecca A. Brunotte requests judgment against Lurita Alexis Doan, in her capacity as the Administrator of the United Stated General Services Administration, as follows:

17

A.    $5,000,000.00 in actual damages for lost income, loss of reputation, and emotional

distress.

B.    Correction of all personnel files.

E.    Reasonable attorneys' fees and costs.

F.    Such other relief as the Court may deem just and proper.


## VERIFICATION

REBECCA A. BRUNOTTE hereby declares under the penalty of perjury that she is the

PLAINTIFF named in this COMPLAINT; she has read the foregoing COMPLAINT in its entirety

and knows the contents thereof; the same is true of her knowledge, except for those matters alleged

on information and belief, and as to those, she believes them to be true and correct.



_____
Rebecca A. Brunotte

March 28, 2008



Respectfully submitted,

April 4, 2008

_____
Edward H. Passman
D.C. Bar No. 101840
PASSMAN & KAPLAN, P.C.
1090 Vermont Avenue, N.W., Suite 500
Washington, D.C.  20005
TEL:  (202) 789-0100
FAX:  (202) 789-0101
Attorney for the Plaintiff

18

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Rebecca A. Brunotte<br>864 N. Kentucky St.<br>Arlington, VA 22205 | Lurita Alexis Doan, Administrator, General Services Administration<br>1800 F Street, NW<br>Washington, DC 20407 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____88888_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Edward H. Passman
D.C. Bar No. 101840
Passman & Kaplan, P.C.
1090 Vermont Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 789-0100 ext. 106

ATTORNEYS (IF KNOWN)

Unknown

CLERK
U.S. DISTRICT & BANKRUPTCY
COURTS
RECEIVED

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ⦿ 2 U.S. Government Defendant
- ⊙ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⊙ 1 | ⊙ 1 | Incorporated or Principal Place of Business in This State | ⊙ 4 | ⊙ 4 |
| Citizen of Another State | ⊙ 2 | ⊙ 2 | Incorporated and Principal Place of Business in Another State | ⊙ 5 | ⊙ 5 |
| Citizen or Subject of a Foreign Country | ⊙ 3 | ⊙ 3 | Foreign Nation | ⊙ 6 | ⊙ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**⊙ A. Antitrust**

- ☐ 410 Antitrust

**⊙ B. Personal Injury/Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**⊙ C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**⊙ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**⊙ E. General Civil (Other)**  OR  **⊙ F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. § 552a - unauthorized disclosure of private documents and failure to maintain accurate records by the General Services Administration

**VII. REQUESTED IN COMPLAINT**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Not less than $1,000
Check YES only if demanded in complaint
**JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 4/4/2008    SIGNATURE OF ATTORNEY OF RECORD *Edward H. Passman*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.