**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

_____

**REBECCA A. BRUNOTTE,**

                        **Plaintiff,**

              v.                                                1:08-CV-587
                                                                       (FJS)

**MARTHA N. JOHNSON, Administrator of the
General Services Administration,**

                        **Defendant.**

_____

**APPEARANCES**                             **OF COUNSEL**

**PASSMAN & KAPLAN, P.C.**            **JOSEPH V. KAPLAN, ESQ.**
1828 L Street, NW                      **ANDREW J. PERLMUTTER, ESQ.**
Suite 600
Washington, DC 20036
Attorneys for Plaintiff

**OFFICE OF THE UNITED**           **HEATHER D. GRAHAM-OLIVER, AUSA**
**STATES ATTORNEY**
501 3rd Street
Room 44808
Washington, DC 20530
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court are Plaintiff Rebecca A. Brunotte's motion for partial summary judgment with respect to her first and fourth causes of action and Defendant General Services Administration's ("GSA") cross-motion for summary judgment as to Plaintiff's amended

complaint in its entirety.

## II. BACKGROUND

From January 27, 2003, until November 26, 2006, GSA employed Plaintiff Rebecca A. Brunotte as the Director of Information Technology ("IT") Operations. On November 3, 2005, Plaintiff contacted the GSA Equal Employment Opportunity ("EEO") office to initiate counseling for a complaint of gender-based discrimination and retaliation. In her EEO complaint, Plaintiff alleged that GSA discriminated against her by giving her a level 2, "partially meets expectations," performance appraisal and retaliated against her by initiating a criminal investigation into alleged discrepancies regarding her requests for reimbursement of travel expenses and compensatory time. The instant case concerns GSA's alleged violations of the Privacy Act, 5 U.S.C. § 552a *et seq.*, stemming from GSA's release of Plaintiff's protected information.

On August 8, 2005, due to issues concerning alleged discrepancies in Plaintiff's requests for travel expense reimbursements, her supervisor, Casey Coleman, filed a complaint with the GSA Office of the Inspector General ("OIG"). Kerry Mannion, OIG Criminal Investigator Special Agent, was assigned the case and investigated the charges against Plaintiff. Following that investigation, OIG referred the case to the U.S. Attorney's Office for the Eastern District of Virginia. Joseph Wheatley, Special Assistant U.S. Attorney for the Eastern District of Virginia, then charged Plaintiff with theft of government property, 18 U.S.C. § 641, and false claims, 18 U.S.C. § 287. As is further discussed below, the criminal charges against Plaintiff were dismissed in June 2006.

On January 4, 2006, the EEO issued a Counselor's Report regarding Plaintiff's November

3, 2005 discrimination and retaliation complaint, which contained, among other things, a summary of Plaintiff's allegations against GSA in her EEO complaint.[1] Plaintiff now alleges that, in violation of the Privacy Act, her supervisor, Casey Coleman, disclosed the contents of her EEO Counselor's interview to GSA employees Gary Drugley, John Geist, and Cecelia Brown,[2] as well as to Coleman's husband, Steve Bolster.

With respect to the criminal charges pending against Plaintiff regarding her travel expense reimbursement requests, in June 2006, Plaintiff signed a pretrial diversion agreement under which all criminal charges against her were dismissed. OIG, however, maintains that it continued its investigation because the servicing agency (GSA's Chief Information Officer) had not yet made a final disposition of the criminal case against Plaintiff. Not until December 12, 2006, when OIG received the final disposition report closing the case, did OIG formally close the case.

On June 20, 2006, Plaintiff submitted an application for employment to the Government Printing Office ("GPO") for an IT Specialist position. She received a tentative offer for employment on October 5, 2006, which was subject to her successful completion of a Questionnaire for Non-Sensitive Positions (Form SF-85) and a Declaration of Federal Employment (Form OF-306). In the Declaration of Federal Employment application form, questions nine and twelve, which are fully set forth below, pertained to whether Plaintiff had ever

---

[1] On January 25, 2006, Plaintiff filed a formal EEO complaint of gender-based discrimination and retaliation against GSA, which GSA accepted for investigation on February 2, 2006.

[2] Cecelia Brown has since married and is referenced in certain filings as Cecelia Brown Lane. The Court will refer to her as either Cecelia Brown or Brown.

been punished criminally or whether she had left any job involuntarily. Plaintiff answered both questions in the negative. As stated, although the criminal case against Plaintiff had been disposed of in June 2006, OIG contends that it continued to investigate Plaintiff until December 2006; and, on October 12, 2006 — after Plaintiff had submitted her completed employment application forms for the GPO position for which she was applying — Casey Coleman sent Plaintiff a letter proposing her removal from GSA.

On October 25, 2006, Plaintiff met with persons at GPO to review her application forms and to complete a drug test. Plaintiff also met with Richard Leeds, her would-be supervisor at GPO, who informed her that her first day of work would be November 26, 2006.[3] On November 2, 2006, GPO sent Plaintiff a "Final Appointment Letter" congratulating her on her selection for the position at GPO.[4]

On November 20, 2006, six days before her effective start date at GPO, Plaintiff and GSA entered into a settlement agreement with respect to her EEO complaint. Under the terms of that agreement, among other things, (1) Plaintiff agreed to resign from her position at GSA effective November 25, 2006; (2) GSA agreed to rescind Plaintiff's "proposed removal action dated October 12, 2006, and that [she] had a clear record while employed at GSA"; (3) GSA agreed to raise Plaintiff's "performance appraisal for the performance period ending September 30, 2005, from a level 2 to a level 3, with no comments by November 25, 2006"; and (4) GSA agreed to provide Plaintiff's prospective employers "only a neutral reference, and shall only state

---

[3] Plaintiff alleges that she requested leave on November 26 and November 27 and that Leeds approved her requested leave.

[4] Among other things, the letter included Plaintiff's job title, pay rate, and set her effective start date for November 26, 2006.

[Plaintiff's] dates of employment with GSA, her job title at the time of her resignation, that she resigned her employment or transferred to another Federal Agency, information about her salary, and her last performance rating." Finally, the settlement agreement provided that, "[i]f [Plaintiff] finds employment with another Federal agency prior to the effective date of her resignation she will transfer to that agency effective November 26, 2006."

GSA OIG Criminal Investigator Mannion subsequently called Nathan Brown, a special agent for the GPO OIG, and told him that he was involved in investigating a criminal case involving Plaintiff and that he had reason to believe her GPO application might have included false statements. On November 21, 2006, after the criminal case against Plaintiff had been disposed of in June 2006 but prior to GSA OIG's alleged formal closing of the case in December 2006, Mannion, from GSA, sent a fax to Brown, at GPO, with Plaintiff's OIG criminal investigation report. Brown then informed his supervisor, Ronald Koch, Assistant Inspector General for Investigations at GPO OIG, about the fax and its contents.

GPO OIG took issue with Plaintiff's responses to questions nine and twelve in her completed Declaration of Federal Employment application form. Question nine asked, "During the last 10 years, have you been convicted, been imprisoned, been on probation, or been on parole?" Plaintiff answered, "No," to that question. Question twelve asked, "During the last 5 years, have you been fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you disbarred from Federal employment by the Office of Personnel Management or any other Federal Agency?" Plaintiff also answered, "No," to that question. The employment application form also provided that, "if you are selected, before you are appointed you will be asked to

update your responses on this form and on other materials submitted during the application process and then to recertify that your answers are true."

On November 28, 2006, when Plaintiff arrived for her first day of work at GPO, Vickie Barber, GPO Director of Human Capital Operations, refused to allow her to begin work and advised her to return to GSA. On November 30, 2006, Barber submitted to GSA a "Request for Preliminary Employment Data" to determine any outstanding issues before allowing Plaintiff to begin her new job at GPO. GSA responded to GPO's request by stating that Plaintiff had a level 2 (rather than level 3) performance review; that, in response to a question regarding whether any unfavorable information regarding Plaintiff's employment at GSA existed, GSA answered, "Don't Know"; and GSA stated that Plaintiff's most recent performance evaluation rating was "Satisfactory." Soon thereafter, in a notice dated December 7, 2006, GPO withdrew Plaintiff's job offer.

In her amended complaint, Plaintiff asserts the following four causes of action against GSA: (1) for the unauthorized disclosure of private documents pursuant to the Privacy Act, 5 U.S.C. § 552a *et seq.*, by sending via email the contents of Plaintiff's EEO counselor's report to GSA employees; (2) for the unauthorized disclosure of private documents pursuant to the Privacy Act, 5 U.S.C. § 552a *et seq.*, by failing to provide a "neutral" employment reference to GPO as the terms of the EEO settlement agreement required and for disclosing related protected documents to GPO; (3) for failing to maintain accurate records pursuant to the Privacy Act, 5 U.S.C. § 552a(e)(5), by failing to expunge unfavorable data from Plaintiff's records as the terms of the EEO settlement agreement required; and (4) for failing to comply with the requirement to collect information from Plaintiff directly, pursuant to the Privacy Act, 5 U.S.C. § 552a(e)(2), by

failing to collect information directly from Plaintiff regarding her application to work at GPO

before requesting such information from GPO.

The Court heard oral argument in support of and in opposition to the pending motions on

August 28, 2012.  At that time, the Court dismissed Plaintiff's third cause of action as abandoned

based on Plaintiff's failure to address that claim in her memorandum of law in opposition to

GSA's motion for summary judgment.  *See* Minute Entry dated August 28, 2012.  The Court also

denied Plaintiff's motion to strike a legal argument GSA allegedly raised for the first time in its

reply to Plaintiff's opposition to GSA's motion for summary judgment for the reasons stated on

the record.  *See id.*  The Court reserved decision with respect to Plaintiff's motion for partial

summary judgment and Defendant's cross-motion.  The following constitutes the Court's

resolution of those remaining issues.

## III. DISCUSSION

### A.      Standard of review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is "material" if it

might affect the outcome of the litigation, *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir.

2006), and an issue is "genuine" if the "evidence is such that a reasonable jury could return a

verdict for the nonmoving party," *Anderson*, 477 U.S. at 248.  In deciding a motion for summary

judgment, the court must view all facts and draw all reasonable inferences in favor of the

nonmoving party.  *See id.* at 255 (citation omitted).

**B.     Cross-motions for summary judgment as to Plaintiff's first cause of action for unauthorized disclosure under the Privacy Act with respect to the EEO counselor's report**

"To prevail on a Privacy Act claim for unlawful disclosure, 'a plaintiff must show that (1) the disclosed information is a "record" contained within a "system of records"; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff.'" *Feldman v. Cent. Intelligence Agency*, Civ. 797 F. Supp. 2d 29, 38 (D.D.C. 2011) (quotation omitted). The plaintiff must additionally have suffered "'actual damages'" as a result of the disclosure. *See id.* (citation omitted).

Plaintiff complains about a disclosure that her supervisor at GSA, Casey Coleman, made when, in an email dated December 15, 2005, she disclosed the contents of Plaintiff's EEO counselor's interview to John Geist, Gary Drugley, Cecelia Brown, and Steven Bolster.[5] Plaintiff claims that this disclosure violated the Privacy Act, which provides that "[n]o agency shall disclose any record . . . to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," subject to certain exceptions. 5 U.S.C. § 552a(b). Plaintiff alleges that, as a result of this disclosure, she has suffered emotional distress and actual damages.

To be timely, a plaintiff must bring her claim under the Privacy Act "within two years from the date on which the cause of action arises[.]" 5 U.S.C. § 552a(g)(5). A cause of action

---

[5] Plaintiff complained about two separate disclosures in her amended complaint, the first of which was made on December 13, 2005, when GSA disclosed the summary of Plaintiff's interview with the EEO counselor to Casey Coleman. During the August 28, 2012 motion argument, however, Plaintiff made clear that she no longer challenges this initial disclosure as violative of the Privacy Act.

arises and the statute of limitations begins to run when "the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987) (citation omitted). Here, Plaintiff filed her federal complaint on March 28, 2008. Plaintiff concedes that, on March 10, 2006, she became aware of the disclosure to Geist and Drugley and, thus, filed her complaint eighteen days beyond the limitations period with respect to the disclosure to Geist and Drugley.

Plaintiff, however, argues that she did not know about the disclosure to Brown and Bolster until August 2006, thereby making her claim timely with respect to them. Plaintiff contends that, in examining this claim for timeliness purposes, the Court should "look separately, alleged violation by alleged violation, to see when the plaintiff learned of the disclosure; the courts will not presume that learning of one violation places the plaintiff [on notice] of other violations, even if similar." *See* Dkt. No. 64 at 17 (citing *Ciralsky* [*v. Cent. Intelligence Agency*,] 689 F. Supp. 2d [141,] 158 [(D.D.C. 2010)] (other citation omitted)).[6]

On the other hand, GSA contends that Plaintiff's failure to file her federal complaint within two years of having learned of the allegedly improper singular disclosure bars her from asserting this cause of action in its entirety.

The Court must essentially decide whether Plaintiff's Privacy Act claim concerning

---

[6] Although a court may equitably toll the statute of limitations in certain cases, "most commonly when the plaintiff 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim[,]'" *Chung v. United States Dep't of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003) (quotation omitted), a Privacy Act claim is not tolled by continuing violations, *see Ciralsky v. Cent. Intelligence Agency*, 689 F. Supp. 2d 141, 153-54 (D.D.C. 2010) (quotation and other citation omitted), and "[a] new cause of action does not arise each time an adverse determination is made based on the allegedly erroneous records[,]" *Allmon v. Fed. Bureau of Prisons*, 605 F. Supp. 2d 1, 4 (D.D.C. 2009) (citations omitted).

GSA's email disclosure of the contents of her EEO counselor's report to Brown and Bolster[7] can be divided into separate disclosures. Coleman's email to Geist, Drugley, Brown, and Bolster constituted a single, discrete act, giving rise to one alleged Privacy Act violation. Plaintiff relies on *Ciralsky* to support her proposition that the Court should essentially divide this cause of action into multiple disclosures to each individual email recipient; and, for timeliness purposes, the two-year statute of limitations should only begin to run when Plaintiff knew or should have known that each email recipient was made privy to her protected information. *Ciralsky*, however, is distinguishable from the case at bar. Whereas the plaintiff in *Ciralsky* had alleged multiple Privacy Act violations stemming from discrete disclosures, *see Ciralsky*, 689 F. Supp. 2d at 157-58, Plaintiff has at all times pursued this claim as a standalone cause of action based on one email sent to four (or three) individuals.

On March 10, 2006, Plaintiff became aware of the email disclosure; and, regardless of whether she knew or should have known that the email was disseminated to Bolster and/or Brown in addition to Geist and Drugley, Plaintiff attained the necessary knowledge of an alleged Privacy Act violation on that date. *See Ciralsky*, 689 F. Supp. 2d at 158. Therefore, the Court finds that the statute of limitations was triggered on March 10, 2006, when Plaintiff first became aware of the email. Plaintiff waited until March 28, 2008, to assert this claim, which is more than two years after the statute of limitations was triggered on March 10, 2006. As such, the Court finds that the statute of limitations bars this Privacy Act claim in its entirety; and, thus, the

---

[7] John Geist, Gary Drugley, and Cecelia Brown were the only persons to whom Coleman addressed the December 15, 2005 email. Coleman did not actually email Bolster, who is Coleman's husband; rather, in her email message, Coleman stated, "Good work, Gary [Drugley]. Steve [Bolster] applauds you." *See* Dkt. No. 53-11. This ambiguous comment indicates that Coleman may have disclosed information to Bolster regarding Plaintiff's EEO allegations.

Court denies Plaintiff's motion for summary judgment with respect to her first cause of action and grants GSA's cross-motion for summary judgment on this claim.

**C.     GSA's cross-motion for summary judgment as to Plaintiff's second cause of action for unauthorized disclosure under the Privacy Act**

Plaintiff alleges that GSA violated the Privacy Act by failing to provide a "neutral" employment reference to GPO as the terms of her EEO settlement agreement required. GPO sent a request to GSA to complete a SF-75 Form, which is a form that is used to obtain pre-employment information from a government job applicant. Plaintiff alleges that, in completing that form, GSA submitted certain erroneous and damaging information to GPO, in violation of the Privacy Act.

Mannion at GSA disclosed Plaintiff's criminal investigative file to Brown at GPO. At the time of their disclosure, the investigative records that Mannion disclosed constituted a "record" contained within a "system of records" within the meaning of the Privacy Act. *See* 5 U.S.C. § 552a(a)(5).[8] Mannion made two separate disclosures to Brown — first via telephone and then a follow-up disclosure via fax.[9]

GSA seeks to invoke one of the twelve exceptions to the general rule prohibiting such disclosures under the so-called "routine use" exception, which allows for the disclosure of

---

[8] In fact, the documents that Mannion sent advised Brown [the recipient] "that this report is from a system of records known as GSA/ADM 24, Investigation Case Files," which is subject to the provisions of the Privacy Act of 1974. Consequently, this report may be disclosed to appropriate GSA officials pursuant to routine use."

[9] At oral argument, the Court raised the issue of whether the oral communication of information contained within a record would violate the Privacy Act. Plaintiff argued that it would. Case law appears to support Plaintiff's position. *See, e.g., Jacobs v. Nat'l Drug Intelligence Ctr.*, 423 F.3d 512, 520-21 n.10 (5th Cir. 2010) (citing cases).

records "for a routine use . . . ." 5 U.S.C. § 552a(b)(3). Routine use means "the use of such record for a purpose which is compatible with the purpose for which it was collected[.]" 5 U.S.C. § 552a(a)(7). Each federal agency is required to publish in the Federal Register a notice regarding the system of records it maintains, along with an explanation regarding the routine uses of such information. *See* 5 U.S.C. § 552a(e)(4)(D). The agency must demonstrate both compatibility and publication in order to invoke the routine use exception. *See Radack v. United States Dep't of Justice*, 402 F. Supp. 2d 99, 104-05 (D.D.C. 2005).

With regard to the requisite published notice, GSA OIG maintains investigative records in accordance with the Privacy Act System of Records Notice GSA/ADM-24, Investigation Case Files ("ADM-24"). ADM-24 listed fourteen routine uses, including, among other things, submissions "[t]o a federal agency in connection with the hiring or retention of an employee . . . ." *See* Dkt. No. 56-21; 68 Fed. Reg. 16798, 16799-800 (Apr. 7, 2003). GSA has, thus, satisfied the publication requirement as applied to the disclosure to GPO.

However, an "agency cannot, by the mere publication of broad routine use purposes, evade the statutory requirement that disclosure must be compatible with the purpose for which the material was collected." *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 550 (3d Cir. 1989). In order to establish "compatibility," the agency's purpose in disclosing the information must have been compatible with its purpose in collecting it. *See Doe v. United States Dep't of Justice*, 660 F. Supp. 2d 31, 48 (D.D.C. 2009). GSA asserts that the record it compiled for the purpose of investigating Plaintiff's alleged travel reimbursement infractions was compatible with the reason for its disclosure to GPO, a prospective employer, because (1) Plaintiff's prior potentially fraudulent conduct indicated a lack of integrity or fitness for employment at GPO and (2)

Mannion, in the course of his investigation, wanted to see if Plaintiff had perpetrated another fraud by submitting false employment application information to GPO, thereby impacting his own investigation.

It is unclear on the current record whether Mannion's disclosures to Brown were compatible with the purpose for which the information was collected. Issues of fact remain regarding Mannion's motives in submitting Plaintiff's criminal investigation information to GPO and whether these submissions can be said to have been compatible with GSA's purpose for collecting it in the first instance. Accordingly, the Court finds that GSA is not entitled to judgment as a matter of law pursuant to the "routine use" exception at this stage of the litigation and, thus, denies GSA's cross-motion for summary judgment with respect to Plaintiff's second cause of action.[10]

**D.  Cross-motions for summary judgment as to Plaintiff's fourth cause of action under the Privacy Act for failure to collect information directly from Plaintiff concerning her application to work at GPO**

Section 552a(e)(2) of the Privacy Act requires federal agencies to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs[.]" 5 U.S.C. § 552a(e)(2). "This section 'was designed to discourage the collection of personal information from third party sources and therefore to encourage the accuracy of Federal data gathering.'" *Augustus v. McHugh*, 825 F. Supp. 2d 245, 257 (D.D.C.

---

[10] As the Court made clear at oral argument, because it appears that the investigation was ongoing at the time of the disclosures, there is some question whether this use of the record would fall within the "routine use" exception. However, because there are material issues of fact that must resolved in order to answer this question, summary judgment is inappropriate.

2011) (quotation omitted). In order to recover under this provision, a plaintiff must establish that "(1) the agency did not obtain information from her 'to the greatest extent practicable,' (2) this violation resulted in an adverse effect on her (as opposed to an adverse determination), and (3) the agency's conduct was 'intentional or willful.'" *Velikonja v. Mueller,* 362 F. Supp. 2d 1, 19 (D.D.C. 2004), *abrogated on other grounds*, *Doe v. Chao*, 540 U.S. 614 (2004) (quotation omitted).

Plaintiff alleges that GSA violated § 552a(e)(2) when Mannion (from GSA) contacted Brown (at GPO) in an effort to collect information regarding Plaintiff's GPO job application. Rather than contacting Brown, Plaintiff contends that Mannion should have contacted her directly to request a copy of her GPO application and/or to discuss information regarding her application, as it would have been practicable for Mannion to have done so.

GSA contends that it could not have practically procured the information from Plaintiff because, among other reasons, Mannion suspected that Plaintiff had falsified aspects of her GPO job application. However, "the fact that plaintiff was suspected of false statements does not excuse the [agency] from seeking information from her directly." *Velikonja,* 362 F. Supp. 2d at 22 (citation omitted). Moreover, "the subjective thought processes . . . are irrelevant to the government's legal obligation under section (e)(2); the 'practicability' standard of that provision requires the government to act in a particular way, not to engage in a particular thought process." *Brune v. Internal Revenue Serv.*, 861 F.2d 1284, 1288 (D.C. Cir. 1988). Although courts have not articulated clearly when it becomes "impracticable" to seek information from the subject individual, the fact that GSA had reason to doubt Plaintiff's credibility does not necessarily mean that seeking information from her was impracticable under the Privacy Act. *See Velikonja*, 362

-14-

F. Supp. 2d at 19 (citation omitted).  The Court finds that issues of fact remain as to whether GSA obtained information from Plaintiff to the greatest extent practicable, whether any such violation was intentional or willful, and whether *GSA's conduct* (not GPO's) resulted in, or proximately caused, some adverse effect on Plaintiff.[11]

Accordingly, because Plaintiff has created genuine issues for trial, the Court denies the parties' cross-motions for summary judgment with respect to Plaintiff's fourth cause of action.

### IV. CONCLUSION

Having carefully reviewed the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's third cause of action is **DISMISSED as abandoned**; and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment is **DENIED**; and the Court further

**ORDERS** that Defendant GSA's cross-motion for summary judgment is **GRANTED** with respect to Plaintiff's first cause of action and **DENIED** in all other respects; and the Court further

---

[11] The record indicates that Mannion contacted Brown to collect information about Plaintiff's GPO job application based at least in part on his belief that Plaintiff had falsified aspects of her GPO job application.  This indicates that Mannion might have intentionally and willfully caused injury to Plaintiff in the form of her job prospects at GPO.  If not intentional and willful, a reasonable jury could find that Mannion's actions were clearly violative of Plaintiff's Privacy Act rights, which is sufficient to preclude summary judgment.  *See Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  Furthermore, the record indicates that GPO only began to consider rescinding Plaintiff's job offer after Mannion contacted Brown.  Thus, it can reasonably be inferred that Mannion's actions could have been the proximate cause of GPO's revocation of Plaintiff's job offer and other allegedly resulting injuries.

**ORDERS** that Plaintiff's counsel shall initiate a telephone conference, using a professional telephone conferencing service, with the Court and opposing counsel on **October 17, 2012**, at **9:30 a.m.** to schedule the trial of this matter. Once all counsel have been connected to the call, the conference service shall contact the Court at the following telephone number: **315-234-8560**.

**IT IS SO ORDERED.**

Dated: September 25, 2012
       Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge